UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HOLLY TEE GRIFFITH,

        Plaintiff,

vs.                                 Case No. 3:12-cv-247-J-MCR

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

        Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and Disability Insurance Benefits ("DIB") on November 26, 2007, alleging an inability to work since April 9, 2004. (Tr. 11). The Social Security Administration ("SSA") denied the application initially on March 19, 2008, and upon reconsideration on June 16, 2008. (Tr. 11). Plaintiff then requested and received an initial hearing before an Administrative Law Judge ("ALJ") on February 9, 2010. (Tr. 11). On April 16, 2010, the ALJ issued a decision finding Plaintiff not disabled. (Tr. 11-20). On May 9, 2010, Plaintiff filed a Request for Review

_____

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 9).

by the Appeals Council.  (Tr. 7-10).  On January 19, 2012, the Appeals Council denied

Plaintiff's Request for Review (Tr. 1-5), thus making the ALJ's April 16, 2010 opinion the

final decision of the Commissioner.  Plaintiff timely appealed this decision by filing her

Complaint in the United States District Court on March 7, 2012.  (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff claims to be disabled since April 9, 2004, due to cardiac difficulties,

including cardiomyopathy, as well as hypokalemia and hypomagnesemia.  (Tr. 155;

Doc. 11, p. 3).

### B.     Summary of Evidence Before the ALJ

Plaintiff was thirty-five years of age on the date of the hearing.  (Tr. 33).  She had

a high school diploma as well as an Associate's Degree in office systems technology,

specializing as an administrative assistant.  Id.  Plaintiff's past relevant work history

included positions as a manager, typist, and cleaner/housekeeper.  (Tr. 40-41, 181-

189).  Plaintiff's medical history is detailed in the record and will simply be summarized

here.

On April 9, 2004, Plaintiff suffered a cardiac arrest, two days after giving birth to

her child.  On April 10, 2004, she was examined by Dr. A. Thomas Romero, a

cardiologist at Putnam Community Medical Center. (Tr. 249-255.)   Dr. Romero's

impression included:

> 1. Status post seizure activity with syncope secondary to
> electrolyte abnormality, hypokalemia and hypomagnesemia
> and possibly nonsustained ventricular tachycardia.
> 2. Prolonged QT secondary to electrolyte disturbance.

2

Id.  Dr. Romero's plan and recommendation included supplementing potassium and magnesium, checking echo-Doppler as well as TSH level and fasting lipid profile, having Plaintiff stop smoking cigarettes, and following electrocardiogram for QT interval measurements as the electrolytes were corrected.  (Tr. 592).  Following this examination, Plaintiff underwent cardiac catheterization and an automatic implantable cardioverting device (an "AICD") was implanted.  Dr. Romero became Plaintiff's treating cardiologist, and Plaintiff followed up with Dr. Romero every four to six months regarding her symptoms from 2004 to the present. (Tr. 679, 687).

On April 12, 2004, Plaintiff was referred to Baptist Health by Dr. Romero in relation to nonsustained ventricular tachycardia and hypokalemia.  (Tr. 239-248).  Dr. Satish Goel assessed:

> 1. Postpartum cardiomyopathy with ventricular arrhythmias, status post placement of an AICD.
> 2. Hypokalemia with prolonged Q-T intervals, full evaluation by renal.
> 3. Normal coronary arteries by cardiac catheterizations.
> 4. Postpartum through a vaginal delivery.
> 5. History of a hernia repair as a child.
> 6. Tobacco use.

(Tr. 246).

On May 21, 2004, Plaintiff presented to Shands Healthcare for an Outpatient Consultation.  (Tr. 259-61).  The physician at Shands determined it was unclear why Plaintiff was lightheaded and dizzy, but believed it may be due to her medications and/or arrhythmia.  (Tr. 260-61).

On October 28, 2004, Plaintiff presented to Dr. Thomas A. Burkart at Shands for a consultation associated with her past cardiac arrest.  (Tr. 287-91).  Dr. Burkart noted

Plaintiff had "shown a gradual improvement in her overall left ventricular systolic function."  (Tr. 288).  Further, a "12-lead [] EKG was taken . . . which show[ed] normal sinus rhythm and normal conduction intervals."  (Tr. 289).

On September 18, 2007, Plaintiff presented to Dr. Burkart with light-headedness. (Tr. 297-300).  Upon discharge, Dr. Burkart's diagnosis included: (1) presyncopal episode and (2) post partum cardiomyopathy status post ICD.  (Tr. 297).

On October 4, 2007, Plaintiff presented to Dr. Burkart to follow up after her presyncopal episode of September 18, 2007.  (Tr. 284-86).  Dr. Burkart determined Plaintiff's ICD was working well and set up a renal consult for further evaluation of her hypokalemia issues.  (Tr. 286).

On January 29, 2008, Plaintiff presented to Dr. Romero for a cardiovascular follow-up.  (Tr. 414-415, 483-484).  Dr. Romero's impression included:

> 1. Cardiomyopathy with improved left ventricular ejection fraction to 55% by echo Doppler on 08/16/2007. Trace mitral regurgitation, normal cardiac valve structure.
> 2. Status post cardiac arrest, 04/09/2004, 2 days post partum.
> 3. Nonsustained ventricular lachycardia status post Guidant dual chamber intracardia defibrillator implanted 8/13/2004 model #A-155. The device parts on the recall list are not active on this patient.
> 4. Chronic hypokalemia/Bartter syndrome/hypomagnesemia
> 5. Ongoing tobacco dependency
> 6. Dizziness most likely vertigo
> 7. Near syncope in 08/2007 with hypotension.

(Tr. 415, 484).

On February 29, 2008, Plaintiff presented to Dr. Anil K. Mandal on a referral from Dr. Romero in relation to her hypokalemia.  (Tr. 323-334).  Dr. Mandal noted that since Plaintiff's cardiac difficulties in April, 2004, Plaintiff had repeated blood chemistry levels

4

that were "sometimes near normal and other times below normal or very low."  (Tr. 328).

Dr. Mandal opined Plaintiff "ha[d] great difficulty in holding her potassium at normal

level" despite regularly taking potassium supplements.  Id.  Dr. Mandal also noted

Plaintiff "used to smoke heavily but now [has cut] down and smokes less."  Id.

On March 18, 2008, Dr. Minal Krishnamurthy conducted a Physical RFC

Assessment.  (Tr. 384-391).  Dr. Krishnamurthy's diagnosis included: (1) PP

cardiomyopathy with ventricular arrhythmias. and (2) status post AICD placement.  (Tr.

384).  Dr. Krishnamurthy found Plaintiff could: occasionally lift and/or carry 20 pounds,

frequently lift and/or carry 10 pounds, stand and/or walk about six hours in an eight-hour

workday, sit for six hours in an eight-hour workday, and was unlimited in her ability to

push and pull.  (Tr. 385).  Dr. Krishnamurthy also noted Plaintiff could never climb

ladders, ropes, or scaffolds.  (Tr. 386).  Lastly, Dr. Krishnamurthy noted Plaintiff should

avoid concentrated exposure to extreme cold and heat and avoid all exposure to

hazards.  Id.

On May 5, 2008, Plaintiff presented to Dr. Romero for another cardiovascular

follow-up. (Tr. 396-402).  Plaintiff underwent an exercise stress test which was negative

for ischemia and demonstrated "[g]ood overall exercise tolerance."  (Tr. 404).

On June 12, 2008, Dr. Mary Seay conducted a Physical RFC Assessment.  (Tr.

470-77).  Dr. Seay noted a primary diagnosis of cardiomyopathy.  (Tr. 470).  Further, Dr.

Seay noted that Plaintiff's symptoms were partially credible to a medically determinable

impairment, Plaintiff's cardiac status appeared stable, and "mental health issues

appear[ed] to be present."  (Tr. 475).  In relation to Plaintiff's RFC, Dr. Seay found

Plaintiff could:

> Occasionally lift and or carry twenty pounds, frequently lift or
> carry ten pounds, stand and/or walk about six hours in an
> eight-hour workday, sit about six hours in an eight-hour
> workday and pushing and/or pulling was unlimited.

(Tr. 471).

On October 30-31, 2009, Dr. Romero assessed Plaintiff's abilities through a

Cardiac RFC Questionnaire and narrative letter.  (Tr. 679-688).  Dr. Romero noted

Plaintiff had been his patient since 2004 and followed up with him every four to six

months.  (Tr. 679; 687).  Dr. Romero opined Plaintiff was incapable of even "low stress"

jobs due to her cardiomyopathy, hypotension, and arrhythmia.  (Tr. 680, 687).   Dr.

Romero additionally opined emotional factors contributed to the severity of her

subjective symptoms and functional limitations as well as frequently interfering with her

attention and concentration.  (Tr. 680-81).  In relation to Plaintiff's RFC, Dr. Romero

opined Plaintiff could: stand/walk for less than two hours, sit for four hours, lie down for

zero to one hour during an eight-hour period, rarely carry less than ten pounds, never

carry above ten pounds, never climb ladders, rarely twist, stoop, climb stairs, and

occasionally crouch.  (Tr. 683-84).  In addition, Dr. Romero found Plaintiff should avoid

all exposure to extreme cold or heat, wetness, humidity, noise, fumes, odors, dusts,

gasses, poor ventilation, and hazards.  Id.  Dr. Romero also opined Plaintiff would likely

miss work more than four days per month due to her impairments.  (Tr. 682).  Finally,

Dr. Romero opined that Plaintiff "present[ed] with New York Heart Association Class IV,

where she [presented] with symptoms of hypotension that occur even at rest."  (Tr.

688).  Therefore, Dr. Romero believed Plaintiff would not be able to "sustain any form of

work on an eight-hour workday, five day a week basis."  Id.

## C.     Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in a

substantial gainful activity by reason of any medically-determinable physical or mental

impairment which can be expected to either result in death or last for a continuous

period of not less than twelve (12) months.  42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20

C.F.R. § 404.1505(a).  The ALJ must follow five steps in evaluating a claim of disability.

20 C.F.R. § 404.1520(a).  First, if a claimant is working at a substantial gainful activity,

she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any

impairment or a combination of impairments which significantly limit her physical or

mental ability to do basic work activities, then she does not have a severe impairment

and is not disabled.  20 C.F.R. § 404.1520(c).

Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R.

Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a

claimant's impairments do not prevent her from doing past relevant work, she is not

disabled.  20 C.F.R. § 404.1520(f).  Fifth, if a claimant's impairments (considering her

RFC, age, education, and past work) prevent her from doing other work that exists in

the national economy, then she is disabled.  20 C.F.R. § 404.1520(g).  Plaintiff bears

the burden of persuasion through step four, while at step five, the burden shifts to the

Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the insured status

requirements of the Social Security Act through December 31, 2005.  (Tr. 13).   At step

one, the ALJ found Plaintiff had "not engaged in substantial gainful activity since her

alleged onset date of April 9, 2004 through her date last insured of December 31, 2005."

7

Id.  At step two, the ALJ found Plaintiff had the following severe impairments: "post powerdigm cardiomyopathy with cardiac defibrillator implantation, hypokalemia, and hypomagnesia." Id.  The ALJ noted he found Plaintiff's Meniere's disease as a non-severe impairment.  Id.  Further, the ALJ noted he did not find Plaintiff's anxiety was a severe impairment because it "did not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities." Id.

At step three, the ALJ found Plaintiff "did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 14).  The ALJ specifically stated "despite [Plaintiff's] combined impairments, the medical evidence does not document listing level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listing, individually or in combination." Id.

With respect to Plaintiff's RFC, the ALJ found Plaintiff could perform light work "except she could not climb ladders, ropes or scaffolds.  She could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl." Id.  The ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 18).  The ALJ further explained, Plaintiff "has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." Id.

At step four, the ALJ utilized the testimony of a vocational expert ("VE") and

found Plaintiff "was capable of performing her past relevant work as a manager, typist, and cleaner/housekeeping." (Tr. 19-20). The VE testified Plaintiff "could perform her past work as a retail store manager and clerk typist both as actually performed by [Plaintiff] and as generally performed in the national economy; and her past work as a cleaner, housekeeping as generally performed in the national economy." (Tr. 20). Since the VE found Plaintiff could perform her past relevant work, the ALJ did not need to proceed to step five. Therefore, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act. Id.

## III.   ANALYSIS

### A.   The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as a finder of fact, and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991);

Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view

the evidence as a whole, taking into account evidence favorable as well as unfavorable

to the decision.  Foote, 67 F.3d at 1560; accord Lowery v. Sullivan, 979 F.2d 835, 837

(11th Cir. 1992) (explaining the court must scrutinize the entire record to determine the

reasonableness of the factual findings).

**B.**    **Issues on Appeal**

Plaintiff argues one issue on appeal.  Plaintiff claims the ALJ erred in evaluating

the opinions of her treating cardiologist, Dr. Romero.  (Doc. 11).  Specifically, Plaintiff

argues the ALJ erred in the following ways: (1) the use of the term "appropriate weight"

is insufficient to satisfy the requirement that the ALJ state with particularity the weight he

provided to Dr. Romero's opinions, (2) the ALJ failed to evaluate Dr. Romero's opinion

using the factors set out in 20 C.F.R. § 404.1527(d), and (3) the ALJ failed to provide

the requisite good cause in support of his total rejection of Dr. Romero's medical

opinions.  (Doc. 11, p. 7).  The Court will examine each of these arguments.

### 1.  Whether the ALJ's use of the term "appropriate weight" failed to satisfy the requirement to state with particularity the amount of weight given to a treating physician's opinion

Plaintiff first asserts the ALJ erred by not stating with particularity the amount of

weight given to the opinions of Plaintiff's treating physician, Dr. Romero, and that the

ALJ's use of the term "appropriate weight" warrants remand.  (Doc. 11, pp. 13-14).  The

Commissioner responds the ALJ considered all of the opinions and the term

"appropriate weight" does not warrant remand.  (Doc. 12, p. 9).

10

The ALJ is required to consider all of the evidence in the claimant's record when making a disability determination.  20 C.F.R. § 404.1520(a).  In addition, the ALJ must state the weight afforded to the evidence considered.  <u>Ryan v. Heckler</u>, 762 F.2d 939, 941 (11th Cir. 1985).  Specifically, the ALJ "should state the weight he accords to each item of impairment evidence and the reasons for his decision to accept or reject that evidence."  <u>Lucas v. Sullivan</u>, 918 F.2d 1567, 1574 (11th Cir. 1990).  Moreover, the "failure to state with particularity the weight given different medical opinions is reversible error."  <u>Caldwell v. Barnhart</u>, 261 F. App'x. 188, 190 (11th Cir. 2008) (citing <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)).

To support her argument that it was error for the ALJ to simply state he gave Dr. Romero's opinions "appropriate weight," Plaintiff cites <u>Varner v. Astrue</u>, No. 3:09-cv-1026-J-TEM, 2011 WL 1196422 (M.D. Fla. Mar. 29, 2011).  In <u>Varner</u>, the ALJ stated he gave the opinion evidence of two treating doctors "appropriate weight."  The court found the word "appropriate" was not sufficient to satisfy the requirement that an ALJ state with particularity the weight given to a medical opinion.  <u>Id.</u> at *11.  However, in <u>Varner</u>, the ALJ discounted the opinions of the two treating physicians by simply stating they were not supported by the evidence without providing any further explanation.  <u>Id.</u> at *10-11.  Further, the claimant in <u>Varner</u> was diagnosed with fibromyalgia and the ALJ discounted the medical opinions on the basis that they were not supported by objective medical findings.  The court held that to be in error as over-reliance on objective testing in a fibromyalgia case was not appropriate.  <u>Id.</u> at *11.  Accordingly, the court in <u>Varner</u> did not find error simply because the ALJ utilized the words "appropriate weight," but rather, found the ALJ's use of "appropriate weight" coupled with his failure to provide

11

sufficient cause for failing to give the opinions controlling weight warranted remand.

In the instant case, the ALJ provided numerous reasons for the weight he provided to Dr. Romero's opinions.  Further, although he simply stated he gave Dr. Romero's opinions appropriate weight, it is clear the ALJ did not accord the opinions any weight.  Indeed, Plaintiff admitted as much in her brief when she stated:

> it is fair to say that the ALJ, in providing "appropriate weight" to the opinions of Dr. Romero, essentially rejected said opinions in whole.

(Doc. 11, p.17).  Accordingly, even if the ALJ committed any error in failing to state with particularity the weight he provided to Dr. Romero's opinions, said error is harmless and not a reason to reverse or remand the case.

### 2.  Whether the ALJ failed to evaluate Dr. Romero's medical evidence pursuant to the factors enumerated in 20 C.F.R. § 404.1527(d).

Plaintiff next contends the ALJ failed to evaluate Dr. Romero's opinion using the factors in 20 C.F.R. § 404.1527(d).  Plaintiff correctly notes that when a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on several factors: 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; and 6) other factors, which tend to support or contradict the opinion.  20 C.F.R. § 404.1527(d).

In the instant case, it is clear the ALJ considered these factors.  While Plaintiff argues there is no indication in the decision that the ALJ considered the length, nature, and extent of the treatment provided by Dr. Romero; the lack of conflicting evidence

from another treating or examining source; or the specialization of Dr. Romero, the undersigned does not agree.  For instance, the ALJ specifically noted that Dr. Romero was Plaintiff's treating cardiologist.  (Tr. 17).  Accordingly, it is clear the ALJ was aware that Dr. Romero was a cardiologist.   Additionally, it is also clear that the ALJ was well aware of the length, nature, and extent of Dr. Romero's treatment as he cited to several medical evaluations and reports generated by Dr. Romero.  (Tr. 16-19).  Finally, the Court sees no error in the ALJ's failure to state that there was a lack of conflicting evidence from another treating or examining source.  Just as there are no records from treating or examining sources conflicting with Dr. Romero's opinions, there are no records from such sources supporting his opinions either.  This factor does not weigh in favor of giving more weight to Dr. Romero's opinions.  Accordingly, the undersigned finds the ALJ's decision indicates he sufficiently considered the factors in 20 C.F.R. § 404.1527(d) when determining the appropriate weight to assign to Dr. Romero's opinions.

### 3. Whether the ALJ failed to provide the requisite good cause in support of his total rejection of the medical opinions of Dr. Romero.

Lastly, Plaintiff contends the ALJ failed to provide sufficient "good cause" to support his complete rejection of Dr. Romero's opinion.  (Doc. 11, pp. 17-20).  The Commissioner argues there was substantial evidence to show and support good cause in the ALJ's rejection of Dr. Romero's opinion.  (Doc. 12, pp. 5-9).

Generally, the ALJ should give more weight to the opinion of a treating source than the opinion of a non-treating source.  20 C.F.R. § 404.1527(c)(2).  Indeed, a treating source's opinion merits controlling weight when it is supported by medically

acceptable clinical or laboratory diagnostic techniques and it is not inconsistent with

other substantial evidence of record.  20 C.F.R. § 404.1527(c)(2).  When a treating

source's medical opinion is not granted controlling or substantial weight, the ALJ must

clearly articulate good cause for discounting it.  Phillips v. Barnhart, 357 F.3d 1232,

1240 (11th Cir. 2004).  Good cause exists when 1) the opinion is not bolstered by the

evidence, 2) the evidence supports a contrary finding, or 3) the treating source's opinion

is conclusory or inconsistent with the source's own medical records.  Id.

In the instant case, the ALJ provided numerous reasons for rejecting Dr.

Romero's opinions.  First, the ALJ observed that Dr. Romero's opinions were not

consistent with the objective medical evidence, with Dr. Romero's own treatment

records, or with Plaintiff's reported activities.  (Tr. 19).  Plaintiff argues Dr. Romero's

opinions were supported by the "objective and clinical findings that evidence the

severity of [Plaintiff's] impairments."  (Doc. 11, p.17).  Specifically, Plaintiff points to Dr.

Romero's note that Plaintiff's impairment was classified as "Class IV," which is defined

as:

> cardiac disease resulting in inability to carry out any physical
> activity without discomfort.  Symptoms of heart failure or
> aginal syndrome may be present even at rest.  If any
> physical activity is undertaken, discomfort increases.

(Doc. 11, p.18).  Plaintiff also points to Dr. Romero's clinical findings that included:

"weakness, palpitations, near syncope, SVT, hypokalemia, hypomagnesemia, and

dizziness and that she also suffers from Bartter's syndrome and cardiomyopathy."

(Doc. 11, p.18).  These "clinical findings" were listed in Dr. Romero's Cardiac Residual

Functional Capacity Questionnaire completed in October 2009 at the behest of

14

Plaintiff's attorney.  (Tr. 679).  While these are certainly the clinical findings listed by Dr. Romero to support his opinions, they do not contradict the ALJ's observation that the objective evidence does support Dr. Romero's opinions.  The ALJ specifically referenced several objective tests which indicated Plaintiff was not as disabled as Dr. Romero opined.  For example, the ALJ noted that two echocardiograms in 2004 showed gradual improvement in Plaintiff's overall left ventricular function with an ejection fraction of 48% (up from 35% in April 2004).  (Tr. 16).  Also, an EKG in October 2004 showed normal sinus rhythm and no indication of past myocardial injury.  Id.  Another EKG in January 2006 again showed normal sinus rhythm and an exercise stress test in on September 9, 2005 was negative for ischemia.  Id.  An echo/Doppler in August 2006 revealed improved left ventricular ejection fraction of 55%.  Id.  Another echo/Doppler was performed in April 2008 again revealed improved left ventricular ejection fraction of 60% and an exercise stress test performed at the same time was negative for ischemia with overall good exercise tolerance.  (Tr. 17).  The undersigned finds this objective evidence does not support the extreme limitations imposed by Dr. Romero.

Plaintiff also takes issue with the ALJ's finding that Dr. Romero's opinions were not consistent with his own treatment records.  Plaintiff believes Dr. Romero's opinions were clearly supported by the treatment notes because the notes showed that Plaintiff required regular and consistent treatment for her ongoing symptoms, which included dizziness, fatigue, weakness, palpitations, and vertigo.  (Doc. 11, p.18).  However, the ALJ specifically recognized these symptoms, and pointed to many of Dr. Romero's records from 2006-2009, which revealed Plaintiff's palpitations "were occurring much less frequently with no accompanying symptoms," her dizziness was recorded "on a

15

very rare basis," Plaintiff had only occasional chest pains that lasted a few seconds, and there had been no syncope.  (Tr. 16-17).  Additionally, the records also show that Plaintiff was exercising regularly at Curves three times a week and was able to walk for forty-five minutes at a time.  This is certainly not consistent with Dr. Romero's opinion that Plaintiff could only stand for ten minutes at a time.

Plaintiff also argues the ALJ erred by finding Dr. Romero's opinions were inconsistent with Plaintiff's testimony.  Plaintiff believes the ALJ has misconstrued her testimony and points to the transcript which indicates that although Plaintiff could do some activities, notably camping, attending her children's sporting events, attending church, and exercising, these activities were severely limited due to her impairments.  (Doc. 11, p.19).  Through her testimony, Plaintiff stated she had the ability to: exercise on a daily basis at her own pace; check emails; pay bills; read newspapers and skim through magazines; attend some of her children's sporting events; attend church once a week for an hour; go camping for two days twice a year; go fishing once a month; and prepare quick, fast meals.  Even with the limitations Plaintiff placed on her ability to perform these activities, the undersigns agrees with the ALJ that they are not consistent with the limitations imposed by Dr. Romero.

Plaintiff also claims the ALJ failed to reference some of Plaintiff's testimony which was consistent with Dr. Romero's limitations, such as her testimony that she needs to lie down and rest for at least three to four hours a day.  However, the ALJ did reference this testimony in his decision (Tr. 15) and subsequently found Plaintiff's statements concerning her symptoms were not credible (Tr. 18).  Plaintiff has not alleged any error in the ALJ's credibility determination.

16

Finally, the ALJ considered the fact that Plaintiff failed to comply with Dr. Romero's direction to discontinue smoking cigarettes until four years after her alleged onset date.  Plaintiff does not challenge this reason and therefore, the undersigned will not discuss it.

In sum, the undersigned finds the ALJ provided sufficient good cause, supported by substantial evidence, for his decision to give no weight to Dr. Romero's opinions.

## IV.    CONCLUSION

For the foregoing reasons, the undersigned finds the ALJ's decision is supported by substantial evidence.  Accordingly, the Clerk of the Court is directed to enter judgment **AFFIRMING** the Commissioner's decision and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this __11th__ day of February, 2013.

Copies to:

Counsel of Record

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE